IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | : | CIVIL ACTION |
| OPPORTUNITY COMMISSION, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 08-5535 |
| | : | |
| DART CONTAINER CORPORATION, | : | |
| Defendant | : | |

## M E M O R A N D U M

**STENGEL, J.** January 27, 2016

### I. INTRODUCTION

The Equal Employment Opportunity Commission ("EEOC") brought this Title VII action against Dart Container Corporation ("Dart"). After extensive litigation, I granted summary judgment in favor of Dart on May 31, 2012 (the "May 31 Opinion"). The action alleged that Dart engaged in unlawful race and national origin discrimination in its employment decisions concerning the promotion of employees. Presently pending is Dart's Motion for Attorney Fees under 42 U.S.C. § 2000e-5(k) and 28 U.S.C. § 1927. Dart seeks $310,064.50. I deny the Motion.

### II. LEGAL STANDARD

In determining whether to award attorneys' fees in a Title VII action, I apply the same standard against the EEOC as against other litigants. See EEOC v. Peoplemark, Inc., 732 F.3d 584 (6th Cir. 2013); 7 Emp. Coord. Employment Practices § 77:27. Attorneys' fees may be awarded to the "prevailing party" in a Title VII action pursuant to

42 U.S.C. § 2000e-5(k).[1] While the statute permits the award of attorneys' fees to both prevailing plaintiffs and defendants, "the standard for awarding attorney's fees to prevailing defendants is more stringent than that for awarding fees to prevailing plaintiffs." Barnes Found. v. Twp. Of Lower Merion, 242 F.3d 151,157-58 (3d Cir. 2001); see also EEOC v. L.B. Foster Co., 123 F.3d 746, 751 (3d Cir. 1997) (noting attorneys' fees for a prevailing defendant "'are not routine, but are to be only sparingly awarded'" (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 503 (3d Cir. 1991))). In contrast to prevailing plaintiffs, who are generally entitled to attorneys' fees absent special circumstances, a prevailing defendant may recover such fees only if the court finds the plaintiff's claim "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 416-17, 421-22 (1978). A court need not find the plaintiff brought the action in bad faith to award attorneys' fees to the prevailing defendant, but must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. at 421-22.

The Third Circuit has identified a number of factors relevant to a court's determination whether an award of attorneys' fees to a prevailing defendant is appropriate, including: (1) whether the plaintiff established a *prima facie* case; (2)

---

[1] The Section provides in full: "In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k).

whether the defendant offered to settle; (3) whether the case was dismissed prior to trial; (4) whether the case involved an issue of first impression requiring judicial resolution; (5) whether the controversy was based on a real threat of injury to the plaintiff; and (6) whether the trial court found the suit frivolous. Barnes, 242 F.3d at 158; see also L.B. Foster Co., 123 F.3d at 751. "These considerations, however, are merely guidelines, not strict rules. . . ." Barnes, 242 F.3d at 158. The ultimate question is "whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." Sullivan v. Sch. Bd. Of Pinellas Cnty., 773 F.2d 1182, 1189 (11th Cir. 1985) (internal quotation marks and citation omitted).

The award of fees as a sanction for conducting vexatious litigation under 28 U.S.C. § 1927 is considered under a different standard. That section provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

To violate § 1927, an attorney must be found to have: "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 101 (3d Cir. 2008); LaSalle Nat'l Bank v. First Connecticut Holding Grp., L.L.C. XXIII, 287 F.3d 279, 288 (3d Cir. 2002) (citing In re Prudential Ins. Am. Sales Practice Litig., 278 F.3d 175, 188 (3d Cir. 2002)). A party seeking an award of attorneys' fees under § 1927 bears a heavy burden. "Courts should

3

exercise [discretion to award § 1927 sanctions] only in instances of a serious and studied disregard for the orderly process of justice." Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986) (citations omitted). The Third Circuit has held that "'sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal.'" Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 142 (3d Cir. 2009) (quoting LaSalle, 287 F.3d at 289). The attorney's conduct "must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." Baker Indus. Inc. v. Cerberus, Ltd., 764 F.2d 204, 208 (3d Cir. 1985) (citation omitted).

"Once a finding of bad faith has been made, the appropriateness of assessing attorneys' fees against counsel under section 1927 is a matter for the district court's discretion." Ford, 790 F. 2d at 347. In exercising that discretion, I "must balance the equities between the parties and may award attorneys' fees whenever overriding considerations indicate the need for such a recovery." Id. A decision to deny fees may be based on a finding that both parties acted in bad faith. See Perichak v. Int'l Union of Elec. Radio, 715 F.2d 78, 80 n.5 (3d Cir. 1983).

## III. PRE-LITIGATION AND LITIGATION HISTORY

Dart employee Ibrahim Al-Badawi[2] filed a Charge of Discrimination with the EEOC on June 20, 2005. A finding of reasonable cause was issued by the EEOC on September 27, 2006; however, that finding was rescinded on October 25, 2007, and the

---

[2] In the record, Al-Badawi's name is spelled both with and without a hyphen.

4

EEOC requested documentation as to every promotion decision at Dart's Leola, Pennsylvania manufacturing facility from 2003 to that date. (Def. Ex. B.) The EEOC refiled and expanded the Charge on January 25, 2008 to include allegations of race (Black), national origin (Hispanic and Asian) and gender (Female) discrimination with respect to Dart's promotion decisions at Leola. (Def. Ex. C.) However, it named only the same charging party. The EEOC requested on site interviews of four Dart managers and five hourly employees on June 12, 2008. (Def. Ex. E.[3]) The EEOC issued a Determination on August 14, 2008, finding reasonable cause that Al-Badawi was denied a promotion on the basis of his race (Black) and national origin (Sudanese). (Def. Ex. D.) The EEOC also asserted that Dart subjected "a class of Hispanic individuals to discrimination with regard to promotion to supervisor positions," but that there was no evidence of a hostile work environment. (Id.) On August 22, 2008, Dart asked to conciliate the dispute and asked the EEOC to identify those Dart employees it asserted were subjected to discrimination. (Def. Ex. F.) The EEOC responded on August 25, 2008, demanding $50,000 for each member of a class of seven Dart employees (not including Al-Badawi). The EEOC specifically refused to identify the seven individuals, stating "it is unnecessary to identify the class members by name at this time, but will do

---

[3] Although Dart asserts that Exhibit E demonstrates that the EEOC "did not seek to interview any Hispanic employees during its investigation," (Def. Mem. at 4) the EEOC has produced the Declaration of Rudolph White, an investigator in its Philadelphia District Office assigned to the Dart investigation. White asserts that he interviewed four Hispanic employees: Angel Martinez, Adrian Bombin, Javier Torres, and Jose Seda. (Pl. Ex. 1.) The EEOC also asserts that Dart knows that its assertion is untrue since the EEOC produced during discovery the non-privileged contents of the investigation file, which contains notes of the Martinez, Torres and Seda interviews. It also listed the notes of the Bombin interview in a privilege log supplied to Dart. (Pl. Ex. 2.)

so in the event [Dart] makes a commitment to provide a proximate remedy for the number of class members (7) identified by the Commission." (Def. Ex. G.) Dart notes that the EEOC also did not state in the demand letter the exact nature of the alleged discrimination. (Def. Ex. G.[4]) Dart replied on September 4, 2008, that the demand was not made in good faith, given the failure to identify the seven employees. (Def. Ex. H.) The same day, the EEOC reiterated its "demand of $50,000 per class member" but identified only six Dart employees (while noting that the original claimant, Al-Badawi, was now privately represented).[5] (Def. Ex. I.) Those employees were: Dayhanna Rodriguez, William W. Cooper, Jose Seda, Carlos Roa, Robert Oriz, and Kyle A. De Jesus. (Id.)

Dart asserts that this demand on behalf of a class of Hispanic individuals was "deceitful" for the following reasons. First, it notes that only five of the persons named have Hispanic surnames. (Id.) It asserts that Kyle DeJesus, had told the EEOC that he "is Caucasian" even though he had a Hispanic surname, but Investigator White responded that his "national origin didn't matter." (Def. Mem. at 5 (citing Def. Ex. J).[6]) William

---

[4] Although Dart is correct that the exact nature of the alleged discrimination was not stated in Ex. G, I note that the EEOC had stated the exact nature of the alleged discrimination in its earlier Determination letter.

[5] The EEOC somewhat disingenuously responds that Investigator White "identified a group of individuals for whom the EEOC was seeking damages," without acknowledging that the number of alleged class members changed from seven to six. (EEOC Resp. at 4.)

[6] Dart's assertion is not an accurate restatement of the content of DeJesus's Declaration. He did not say he told White he was Caucasian. He actually stated "I told Mr. White that I did not believe I would qualify as a 'class member' due to my white skin. Mr. White told me, 'that doesn't matter.'" (Def. Ex. J.) Dart's interpretation of this statement to imply that the EEOC

6

W. Cooper is African-American, not Hispanic. (Def. Ex. K.) Dayhanna Rodriguez had told the EEOC in June 2008 that she did not believe she was the subject of discrimination with regard to any promotion, and was never asked for her permission to be included as a class member. (Def. Ex. L.) Finally, Robert Ortiz asserts he was never interviewed by the EEOC or asked if he wanted to be a class member. (Def. Ex. M.)

Dart replied to the EEOC on September 10, 2008, noting that there were only six persons named, not seven, and that one individual had received a promotion. Nonetheless, it offered a lump sum payment of $16,975 to resolve the matter with regard to the six individuals, and a payment of $4,200 to Al-Badawi. (Def. Ex. N.) In a follow-up conciliation conference, Dart asserts that the EEOC investigator Rudy White mocked Dart's conciliation offer, stating the offer was "amusing," and that the EEOC attorney Judith O'Boyle refused to explain the basis for the EEOC's demand of $50,000 per claimant.[7] (Def. Ex. O.) The EEOC issued a "Notice of Conciliation Failure" on September 26, 2008. (Def. Ex. P.)

The EEOC filed its Complaint in this action on November 25, 2008, alleging a class of Black and Hispanic employees. (Docket Entry 1, ¶ 8.) Dart notes that the EEOC alleged discrimination against a class of Black employees, even though the EEOC's

---

told him "his national origin" didn't matter is inaccurate. DeJesus's comment concerned his light skin complexion, not his race or national origin.

[7] The EEOC responds to this allegation in a footnote, first asserting that the accusation is irrelevant and that White does not recall the specific statement attributed to him, but conceding that White "may have briefly expressed consternation at the conciliation meeting." (EEOC Resp. at 5 n.8.) The EEOC adds that Dart's counsel did not express at the time that White had offended him. (Id.) The EEOC does not challenge the assertion regarding O'Boyle.

Letter of Determination made no reasonable cause finding of class discrimination against Blacks. In its initial Rule 26 disclosure, the EEOC identified only two employees (in addition to Al-Badawi) it believed were subject to discrimination, Jose Seda and Ulises Roman. It did not list Cooper, Rodriguez, DeJesus, Roa, and Ortiz, for whom it had demanded $50,000 in the conciliation process. (Def. Ex. R.) Dart argues that this is evidence that the EEOC recognized that the claims for these individuals were meritless. When Dart counsel emailed EEOC Trial Attorney Marison Ramos to confirm there were two class members, Ramos replied on February 12, 2009 that "As of now we have three people. We expect more."[8] (Def. Ex. S.) The EEOC sent solicitation letters to Dart employees on March 5, 2009 asking them to contact Ramos if they believed they were subjected to discrimination. (Def. Ex. T.) After Dart moved the Court to establish a deadline for the EEOC to identify class members (see Docket Entry No. 15), the EEOC supplemented its Rule 26 disclosure on June 4, 2009 to name three additional claimants, Pedro Lara, Adrian Bombin and Javier Torres. (Def. Ex. V.) In compliance with the deadline I established for the EEOC to send Dart a definitive identification, it filed an additional supplement on July 14, 2009 naming William Cooper, Carlos Roa, Dayhanna Rodriguez, Robert Oriz, and Kyle DeJesus as both claimants and witnesses. (Def. Ex. X.) Ramos emailed Dart counsel on July 27, to inform him that the EEOC also wished to

---

[8] The EEOC does not deny that this exchange occurred, but notes that the exchange occurred early in the discovery process. (EEOC Resp. at 7 n.12.)

add Jules Montenlor as a claimant.[9]  (Def. Ex. Y.)  However, on October 27, 2009, Ramos notified Dart counsel that the EEOC was "not moving forward with Messrs. Seda, Cooper, Roa, Ortiz and DeJesus.  In addition, we will not be moving forward with regards to Ms. Rodriguez.  Th [sic] EEOC however, will continue to prosecute the matter of Mr. Montenlor notwithstanding he is not in the vicinity."  (Def. Ex. Z.)  Dart notes that the class, at that point, consisted of five members, none of whom had been identified during the pre-litigation investigation or conciliation.  The EEOC then dropped Montenlor as a class member on December 17, 2009, leaving four members of the class. (Def. Ex. BB.)

Counsel for Dart emailed counsel for the EEOC on January 26, 2010, asking it to withdraw its lawsuit in exchange for Dart foregoing any effort to seek attorneys' fees. (Def. Ex. FF.)  The demand was based on the EEOC's shifting pre-litigation and litigation conduct in naming at least seven individuals:

> who had no claim (six of whom were identified only after the court gave you a hard deadline to identify the class), the fact that you identified a non-minority individual with a Hispanic sur-name who, our understanding is, never responded to any attempts to contact him (indicating a lack of investigation), the fact that even some of the current class members can't identify the position(s) at issue (and those who can have no genuine belief that discrimination played a role — particularly since they have either been fired or promoted), the fact that <u>we</u> had to advise the Commission that persons who you wanted to depose had nothing to do with the case (after incurring the expense of prepping them), the fact that we showed up for multiple depositions where the Commission was unprepared —

---

[9] I note that this person's first and last names are transposed and inconsistently spelled in the moving papers.

9

> either by not having its own witness available (Jose Seda) or by not having any questions for the witness (Jeff Heagy), etc. etc. You can imagine that a review of these issues will require an extensive review of the Commission's files and communications with class and non-class members (which the court has already permitted in a discovery context), which will be time consuming and costly. As such, I would ask that you consider our offer seriously and get back to me at your earliest convenience.

(Id.) The EEOC responded:

> As basis for your proposal [that the EEOC dismiss the lawsuit] you state that the EEOC did not properly identify the class members. . . . The EEOC has not [sic] control over the class members or the fact that they decided not to participate in the litigation. The EEOC responsibly and timely withdrew these individuals because they were not interested in participating in the lawsuit, not because they did not have a claim. . . . The fact that the individuals did not know if it was their national origin the reason [sic] for the denial of promotion is not determinative of the case. . . . In order to obtain sanctions [,] Defendant would have to establish that the EEOC knowingly filed a frivolous lawsuit. There are enough issues of fact in this case to take this matter to a jury. At this point we decline Defendant's offer.

(Id.) In a follow-up email two days later, the EEOC added that it had advised Dart of its decisions to drop claimants Seda, Rodriguez, Cooper, Roa, Dejesus and Ortiz well in advance of those claimants' scheduled depositions; had agreed with Dart's suggestion that a defense witness need not be deposed; and reminded counsel for Dart that he had also failed to supplement discovery and had cancelled depositions. (EEOC Ex. 15.)

When Dart moved for summary judgment on February 5, 2010 (see Docket Entry No. 30), the EEOC's Response dropped Lara and Torres as class members. (See Docket Entry No. 40 at 14, 20.) Thus, only two individuals, in additional to the named claimant

Al-Badawi, remained with contested claims in the case: Adrian Bombin and Ulises Roman. I granted summary judgment to Dart with regard to all claimants because I concluded that the EEOC had failed to meet its burden to show evidence of pretext.

Dart asserts it is entitled to fees under § 2000e on two theories: (1) the EEOC failed to investigate and conciliate the claims it advanced, and (2) the claims it eventually litigated were frivolous.[10]

The EEOC responds that (1) Dart cannot recover fees incurred during the administrative period; (2) Dart cannot base a claim for Title VII fees on a failure to conciliate because it has waived any challenge that the EEOC failed to satisfy that condition precedent prior to filing suit; and (3) even though I granted summary judgment to Dart, I never indicated that its claims were frivolous, and any assertion of frivolity is belied by the lengthy analysis dedicated to consideration of the EEOC's pretext arguments.

IV. ANALYSIS

    a.    Pre-Litigation Fees and Waiver

As a preliminary matter, the EEOC argues that Dart cannot recover fees based on the EEOC's alleged conduct in the investigation and conciliation phase of the dispute because Dart waived any argument that the EEOC had failed to meet these conditions

---

[10] I note that Dart makes factual assertions concerning an alleged misrepresentation by the EEOC to the Court of evidence relevant to Al-Badawi's claim. However, it never makes any argument that this misrepresentation is a discrete reason for awarding fees under either Title VII or Section 1927. I do not rely on these allegations since they are disputed by EEOC and Dart never ties them to any specific legal argument.

precedent to its filing the litigation.[11] It notes that, at the time it filed the Complaint, Dart was fully aware of all of the deficiencies it now alleges regarding the EEOC's pre-litigation conduct, i.e., who it had identified as claimants in the Determination and in the demand letter, the amount of damages it sought, that it was litigating on behalf of persons with a specific protected characteristics, and the allegation that it had not identified those individuals it claimed were in the class. It argues that, although Dart preserved an affirmative defense that the EEOC failed to properly conciliate, see Answer, Affirmative Defenses at ¶ 8, Dart did not move to dismiss the Complaint on this basis. It also did not seek to exclude claimants that the EEOC identified in its Rule 26 disclosures on the basis that the EEOC had not earlier included those claimants in the conciliation.

I find that the EEOC's preliminary argument is meritless. First, it cites no authority to support its contention that a defendant cannot seek fees based in part on improper conciliation when that defendant later receives a judgment on the merits. Second, while failure to conciliate is an affirmative defense, and affirmative defenses may be waived when a defendant fails to raise it in a responsive pleading or by filing an appropriate motion, see, generally Charpentier v. Godsil, 937 F.2d 859, 863 (3d Cir. 1991) ("Failure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense."), the EEOC concedes that Dart

---

[11] Before the EEOC is able to file a lawsuit in its own name, it must establish that it has met four conditions precedent, namely: the existence of a timely charge of discrimination, the fact that the EEOC conducted an investigation, issued a reasonable cause determination, and attempted conciliation prior to filing suit. EEOC v. Grane Healthcare Co., Civ. A. No. 10-250, 2013 WL 1102880, at *3 (W.D. Pa. Mar. 15, 2013); EEOC v. E.I. DuPont de Nemours & Co., 373 F. Supp. 1321 (D. Del. 1974), aff'd on other grounds, 516 F.2d 1297 (3d Cir. 1975).

**did** raise the failure to conciliate as an affirmative defense. How Dart waived its right to seek statutory fees because it sought summary judgment on other, ultimately successful grounds, eludes explanation. That Dart chose not to raise the EEOC's failure to conciliate certain claimants in a dispositive motion is certainly understandable, since Dart's "remedy" would prolong the process by permitting the EEOC an opportunity to complete the conciliation, rather than result in the final adjudication it ultimately secured.[12]

      b.      Fees Under Title VII

As stated, a prevailing defendant may recover fees only if the EEOC's claim was frivolous, unreasonable, or groundless, or if the EEOC continued to litigate after this became clear. See Christiansburg Garment Co., 434 U.S. at 416-17, 421-22. I find that Dart ultimately fails to meet this high burden. The EEOC is correct when it argues that I did not find specifically that its claims were frivolous at the summary judgment phase. However, that is not the end of the analysis.

Dart's strongest argument for fees lies in the EEOC's inconsistencies during the investigation/conciliation process before initiating the litigation. The record shows that the EEOC identified claimants, and made conciliation demands on their behalf, before eventually dropping claimants for whom, apparently, it would later conclude it could not meet its evidentiary burden in the litigation. This occurred during the discovery process and in the dispositive motion practice, and eventually left only three claimants. In

---

[12] However, it must be noted that while not constituting waiver, Dart's failure to raise the EEOC's conciliation and investigative efforts earlier in the litigation impacted its opportunity to create an evidentiary basis on which to rule on the alleged impropriety of those efforts.

response to Dart's summary judgment motion, the EEOC offered arguments that Dart's stated non-discriminatory reasons for its employment decisions were pretextual. The fact that I rejected those arguments does not dictate a finding that the claims were frivolous.

Appling the Barnes factors, I find that the first factor favors the EEOC. It is undisputed that it established a *prima facie* case for purposes of the Rule 56 phase of the case. See May 31 Opinion at 8 ("Here, for purposes of this motion, the defendant concedes that the three employees have established *prima facie* cases.").

The second factor — whether the defendant offered to settle — favors EEOC. Somewhat strangely, Dart asserts that it never offered to settle the litigation, thereby demonstrating that it never saw a risk in the defense of the case or merit in the claims brought. (Def. Mem. at 21.) However, the record includes the exchange of emails discussed above in which Dart made an offer in compromise on January 26, 2010, shortly before filing its summary judgment motion, asking the EEOC to withdraw its lawsuit in exchange for Dart foregoing any effort to seek attorneys' fees. (Def. Ex. FF.) I can discern no difference between a settlement offer involving a payment to a plaintiff and one involving the potentially prevailing defendant forbearing on its right to seek fees from a losing plaintiff. It must also be remembered that Dart offered to settle the dispute at the conciliation phase.

On the other factors, I note that the case was dismissed prior to trial; there is no assertion that the case involved an issue of first impression requiring judicial resolution; and there appears to be little controversy that there was ever any real threat of injury to

any of the three claimants, since each had been promoted to a supervisory position with the company. These factors arguably favor Dart.

On the ultimate question of "whether the case is so lacking in arguable merit as to be groundless or without foundation," see Sullivan, 773 F.2d at 1189, I find that Dart has failed to show that the EEOC's conduct rose to this level. While there is a clear history of shifts in the EEOC's litigation strategy — naming claimants, making demands on their behalf, and then dropping them from the litigation — this does not support a finding that the EEOC lacked a foundation with regard to these individuals when it litigated on their behalf. Although I rejected the EEOC's legal arguments on the issue of pretext, finding that those arguments were improper because they essentially challenged the soundness of Dart's business decisions to promote others over Al-Badawi, Bombin and Roman, rather than the fact that Dart had a basis to have made those decisions (see May 31 Opinion at 19, 21, 24-25, 27, 33, 35-36), EEOC still had evidence to present to support its arguments, and I did not find those arguments were frivolous. Accordingly, I deny the Motion for Title VII fees.

    c.    Fees Under Section 1927

Dart argues that the "principal focus" of its request for fees as a sanction under Section 1927 is the EEOC's "hide and seek behavior with respect to the 'class' — most notably (but not exclusively) its addition of the conciliation class to the litigation in July 2009 — when the Commission did not have, and could not have had, any legitimate belief that the individual members of the class had viable claims. . . ." (Def. Mem. at 14.) It makes no other specific argument incorporating the arguably more stringent standard

applicable to Section 1927. I find that the EEOC did not multiply the proceedings in an unreasonable and vexatious manner.

Dart's brief treatment of its Section 1927 argument apparently relies upon the EEOC's filing of its supplemental Rule 26 disclosure in July 2009 naming William Cooper, Carlos Roa, Dayhanna Rodriguez, Robert Oriz, Kyle DeJesus, and Jules Montenlor as both claimants and witnesses, only to disavow any claim in October 2009 on behalf of Cooper, Roa, Ortiz, DeJesus, and Rodriguez (as well as for Jose Seda who had been named in the earlier conciliation demand), and any claim for Montenlor in December 2009. (Def. Exs. X, Y, Z, BB.) Dart, however, concedes that Cooper, Roa, Ortiz, DeJesus, and Montenlor were dropped prior to their scheduled depositions and Seda was dropped when the EEOC was unable to produce him for his deposition. (Def. Mem. at 9.) Thus, other than the extent to which Dart may have engaged in preparation for those depositions, it is not apparent how the inclusion of these individuals in the Rule 26 supplement vexatiously multiplied the proceedings.

I have reviewed the attorney billing records submitted by Dart's counsel in an attempt to isolate any fees specifically attributed to the dropped claimants, recognizing that other billing entries may have involved these claimants, even though the claimants' name was not specified. I find the following entries:

| Date | Description | Time | Amount billed |
|---|---|---|---|
| 9/14/09 | Prepared for Seda Dep | 1.5 | $ 480.00 |
| 9/15/09 | Conclude preparation for Deposition of Seda and Roman | 1.40 | $ 448.00 |
| 10/9/09 | Draft and Serve Notices of Depositions for Add'l claimants | 0.50 | $ 142.50 |

16

| Date | Description | Hours | Amount |
|---|---|---|---|
| 10/26/09 | Exchange email comm. With the EEOC . . . regarding . . . uncertainty surrounding claimants' status. | 0.50 | $ 142.50 |
| 10/28/09 | Formulate strategy re: dismissal of numerous class members | 0.30 | $ 96.00 |
| 10/29/09 | Begin preparation for upcoming deps. of additional claimants | 4.20 | $ 1,197 |
| 10/30/09 | Continue prep. for upcoming deps. . . . | 0.80 | $ 228.00 |
| 11/17/09 | Exchange email regarding dep. of Montalnor | 0.20 | $ 57.00 |
| 12/28/09 | Continued prep. for deps. of Javier Torres and Pedro Lara Valdez | 0.50 | $ 142.50 |
| 12/29/09 | Final prep. for and participate in deps. of Pedro Lara-Valdez and Javier Torres | 7.00 | $ 1,995.00 |
| 12/29/09 | Draft corr. to EEOC regarding discovery issues arising from dep. of Pedro Lara-Valdez and Javier Torres | 0.80 | $ 228.00 |
| 1/15/10 | Begin compiling dep. digest of Javier Torres | 0.70 | $ 199.50 |
| 1/16/10 | Create dep. digests of Javier Torres, Pedro Lara-Valdez and Adrian Bombin | 4.20 | $ 1,197.00 |
| **TOTALS** | | **22.6** | **$6,553.00** |

On the ultimate question of whether the EEOC's attorneys' conduct was "of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation," I conclude that the limited nature of the billing records showing effort specifically directed to these additional claimants militates against such a finding. While the proceedings may have been multiplied in the sense that additional claimants had to be addressed by Dart, the scope of the litigation was not significantly changed in the same manner as if the EEOC had advanced new theories or new causes of action. Accordingly, I find that Dart is not entitled to fees as a litigation sanction under Section 1927.

An appropriate Order denying Dart's Motion for attorneys' fees follows.